[Cite as *AirBorn Electronics, Inc. v. Magnum Energy Solutions, L.L.C.*, 2017-Ohio-70.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

AIRBORN ELECTRONICS, INC.

    Appellee/Cross-Appellant

v.

MAGNUM ENERGY SOLUTIONS, LLC

    Appellant/Cross-Appellee

C.A. No.     28034

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2013 06 2736

DECISION AND JOURNAL ENTRY

Dated: January 11, 2017

HENSAL, Judge.

{¶1} Magnum Energy Solutions, LLC appeals a judgment of the Summit County Court of Common Pleas that awarded damages to AirBorn Electronics, Inc. on its breach of contract claim. AirBorn has cross-appealed the court's judgment awarding Magnum damages on its conversion claim. For the following reasons, this Court affirms in part and reverses in part.

I.

{¶2} AirBorn promotes itself as a one-stop shop for electronics design and manufacturing. In 2010, Magnum hired AirBorn to manufacture a power strip for it. It later hired AirBorn to design and manufacture an "access point" that would help wireless devices communicate with a network and a "dimmer relay" that would control overhead lighting. Magnum also hired AirBorn to design an infrared motion sensor and to design a new version of the power strip after the original did not perform as well as anticipated.

**{¶3}** According to Magnum, none of the products that AirBorn designed or manufactured worked correctly. It, therefore, began outsourcing its projects to a different company. After Magnum stopped using AirBorn, AirBorn sued Magnum for breach of contract and unjust enrichment, alleging that Magnum had failed to pay for all the work it performed. Magnum counterclaimed, alleging breach of contract, conversion, negligence, and breach of warranty, alleging that AirBorn had sold it defective products and had improperly retained some of its materials after the contracts were cancelled.

**{¶4}** The case eventually proceeded to trial on AirBorn's breach of contract and unjust enrichment claims and Magnum's breach of contract and conversion claims. Following the presentation of the evidence, the trial court directed a verdict in favor of AirBorn with respect to its allegation that Magnum failed to pay for all of the work it performed on the two versions of the power strip and the dimmer relay. The jury found that Magnum breached its contract with AirBorn with respect to the access points and motion sensors. The jury found in favor of Magnum on its conversion claim and also awarded Magnum punitive damages. Following the trial, however, the court granted AirBorn judgment notwithstanding the verdict with respect to the jury's punitive damages award. Magnum has appealed the trial court's judgment, assigning three errors, and Airborn has cross-appealed, assigning two errors.

MAGNUM'S ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING AIRBORN'S MOTION FOR DIRECTED VERDICT IN FAVOR OF AIRBORN'S CONTRACT CLAIMS, AND AGAINST MAGNUM'S COUNTERCLAIMS, WITH RESPECT TO THREE OF AIRBORN'S PROJECTS THAT DID NOT RESULT IN WORKING PRODUCTS.

**{¶5}** Magnum argues that the trial court incorrectly granted AirBorn's motion for directed verdict as to the two versions of the power strip and the dimmer relays. Under Civil

Rule 50(A)(4), the trial court shall grant a motion for directed verdict after the evidence has been presented if, "after construing the evidence most strongly in favor of the party against whom the motion is directed, * * * reasonable minds could come to but one conclusion upon the evidence submitted * * *." Civ.R. 50(A)(4); *Parrish v. Jones*, 138 Ohio St.3d 23, 2013-Ohio-5224, ¶ 16. "By the same token, if there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied." *Hawkins v. Ivy*, 50 Ohio St.2d 114, 115 (1977). Because a motion for directed verdict presents a question of law, this Court's review is de novo. *Jackovic v. Webb*, 9th Dist. Summit No. 26555, 2013-Ohio-2520, ¶ 6.

{¶6} Magnum argues that AirBorn was not entitled to a directed verdict on the parties' breach of contract claims because none of the products it produced worked. It notes that there was evidence that the original version of the power strip tended to explode and that there were even char marks on the example presented at trial. Magnum notes that one of AirBorn's employees admitted that the dimmer relays also blew up when they were installed at their intended destination. It contends that, even though the second version of the power strip never made it to production, the prototype it received also did not work. According to Magnum, because AirBorn did not produce working products, it had no obligation to pay AirBorn.

{¶7} Regarding the first version of the power strip, the evidence at trial was that Magnum hired AirBorn to manufacture a design that Magnum provided, using a list of components that Magnum also provided. Although it was not disputed that some of the power strips did not work correctly, Magnum did not present any evidence that the reason the power strips failed was because of AirBorn's manufacturing process instead of the design Magnum provided or the components Magnum selected. According to one of AirBorn's engineers, he

attempted to replicate what caused some of the power strips to stop working, but was unable to duplicate the issue. He, therefore, concluded that it must have been some sort of catastrophic event at the facility where they were being used that caused them to fail. AirBorn also presented evidence that it delivered over 2,600 power strips to Magnum and that only a few had been returned to it.

{¶8} Regarding the second version of the power strip, Magnum hired AirBorn to redesign the power strip, hoping to correct the alleged problems with the first version. The record indicates that AirBorn developed a prototype of a redesigned power strip, but Magnum chose not to use it. Magnum did not submit any evidence that AirBorn failed to perform its obligations with respect to the redesign of the power strip.

{¶9} Regarding the dimmer relays, one of AirBorn's engineers testified that the relays were designed to operate on a 110-volt system. After completing the design, they produced a prototype, which Magnum approved. AirBorn, therefore, began manufacturing the relays. When the relays were installed at a federal courthouse, however, they malfunctioned because it had a 277-volt system. According to AirBorn's engineer, AirBorn replaced a part on the relays at its own cost so that the relays would work at the courthouse. He testified that there were no further issues with the dimmer relays and that Magnum even ordered another 102 dimmer relays after the problem was corrected.

{¶10} Upon review of the record, AirBorn demonstrated that it performed its obligations under the parties' contracts regarding the two versions of the power strip and the dimmer relays. Magnum did not offer any expert testimony that the alleged problems with the first version of the power strip were attributable to AirBorn's manufacturing process, and it approved the version of the dimmer relay that did not initially work at the federal courthouse. In addition, there was no

evidence that AirBorn failed to design a second version of the power strip. We, therefore, conclude that the trial court correctly granted AirBorn's motion for directed verdict as to the power strips and dimmer relays. Magnum's first assignment of error is overruled.

MAGNUM'S ASSIGNMENT OF ERROR II

THE TRIAL COURT ABUSED ITS DISCRETION TO MAGNUM'S PREJUDICE BY DECIDING A CONTESTED QUESTION OF FACT IN APPLYING THE PREDOMINANT-PURPOSE TEST TO CONCLUDE [THAT] THE UCC APPLIES TO A HYBRID SERVICE AND GOODS CONTRACT, BY ATTEMPTING TO RESOLVE MAGNUM'S OBJECTIONS TO UCC INSTRUCTIONS BY GIVING BOTH UCC SALES AND COMMON LAW CONTRACT INSTRUCTIONS WITH REGARD TO THE SAME TRANSACTIONS AND THEN BY REFUSING MAGNUM'S REQUEST TO CHARGE ALL CLAIMS THE SAME WAY UNLESS MAGNUM WAIVED ITS OBJECTIONS TO UCC INSTRUCTIONS.

{¶11} Magnum argues that the trial court incorrectly granted AirBorn's request to instruct the jury on sales under the Uniform Commercial Code (UCC) because AirBorn never pleaded breach of contract under the UCC. It also argues that the court erred because it instructed the jury under the UCC as to AirBorn's breach-of-contract claims, but under the common law as to Magnum's breach-of-contract counterclaims. According to Magnum, because all the breach of contract claims arose out of the same contracts, they should have all been UCC claims or common law claims.

{¶12} Generally, a trial court has broad discretion in how to fashion jury instructions. "In examining errors in a jury instruction, a reviewing court must consider the jury charge as a whole and 'must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights." *Kokitka v. Ford Motor Co.*, 73 Ohio St.3d 89, 93 (1995), quoting *Becker v. Lake Cty. Mem. Hosp. W.*, 53 Ohio St.3d 202, 208 (1990). "Whether the jury instructions correctly state the law is a question that is reviewed de novo." *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, ¶ 135.

{¶13} Regarding Magnum's argument that AirBorn failed to plead a claim under the UCC, this Court has recognized that parties cannot avoid the application of the UCC through creative pleading. *Radio Parts Co. v. Invacare Corp.*, 178 Ohio App.3d 198, 2008-Ohio-4777, ¶ 17 (9th Dist.). Instead, Revised Code Chapter 1302, which is Ohio's codification of the UCC, applies to all transactions in goods, including specially manufactured goods. *Id*. at ¶ 19, citing R.C. 1302.02 and R.C. 1302.01(A)(8). We, therefore, conclude that AirBorn was not required to plead its breach of contract claims under the UCC in order to be entitled to appropriate jury instructions.

{¶14} Regarding whether the UCC or common law applied to the parties' contracts, we note that their contract for the access points required AirBorn to both design and manufacture the device. "When a mixed contract is at issue, R.C. 1302 applies if 'the predominant factor and purpose of the contract is the sale of goods.'" *Renaissance Technologies, Inc. v. Speaker Components, Inc.*, 9th Dist. Summit No. 21183, 2003-Ohio-98, ¶ 5, quoting *Allgood Mun. Equip. Supply, Inc. v. Artino*, 9th Dist. Summit No. 18184, 1997 WL 625481, *6 (Oct. 1, 1997). Here, because the predominant purpose of the contracts was to produce a finished product that Magnum could sell to its customer, we conclude that the predominant purpose of the contracts was for the sale of goods. *See Action Group, Inc. v. NanoStatics Corp.*, 10th Dist. Franklin No. 13AP-72, 2013-Ohio-5542, ¶ 45 ("[S]pending significant time and resources to design or engineer the product sold does not transform a contract for goods into a contract for services."). Accordingly, the trial court correctly concluded that the UCC applied to AirBorn's access-points claim.

{¶15} As for the motion sensor, AirBorn's work on it never moved beyond the design phase because Magnum switched companies before accepting AirBorn's prototype. Thus, the

predominant purpose test was not applicable and the trial court should have concluded that the UCC did not apply to the motion-sensor design contract.

{¶16}  Regarding Magnum's argument that the trial court erred because it gave the jury UCC instructions as to AirBorn's breach of contract claim but common law instructions as to its breach-of-contract counterclaim, the trial court explained that it was giving the common law instructions on Magnum's counterclaim because it would not allow Magnum to object to the giving of UCC instructions and then request that its counterclaim be assessed under the UCC. According to Magnum, the "result was a set of serpentine instructions with different elements and inconsistent burdens of proof all applied to the same contracts."  Magnum argues that the jury was likely misled by the inconsistent instructions.

{¶17}  "A charge to the jury should be a plain, distinct and unambiguous statement of the law as applicable to the case made before the jury by the proof adduced."  *Marshall v. Gibson*, 19 Ohio St.3d 10, 12 (1985).  The trial court, however, instructed the jury to apply both the UCC and the common law to the same contracts, despite determining, albeit incorrectly, that both contracts were governed by the UCC.  Upon review of the record, we conclude that the court's jury-instruction decision was incorrect as a matter of law and created a significant possibility of confusing the jury.  Magnum's second assignment of error is sustained.

MAGNUM'S ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING AIRBORN'S POST-TRIAL MOTION FOR DIRECTED VERDICT OR JNOV NEGATING THE JURY VERDICT FINDING LEGAL MALICE BY CLEAR AND CONVINCING EVIDENCE AND AWARDING MAGNUM PUNITIVE DAMAGES AND ATTORNEY FEES.

{¶18}  Magnum also argues that the trial court incorrectly granted AirBorn's motion for judgment notwithstanding the verdict on the issue of punitive damages.  Under Civil Rule 50(B),

after the jury's verdict is entered in the trial court's judgment, the losing party may move to have the judgment set aside. Judgment notwithstanding the verdict pursuant to Civil Rule 50(B) "is proper if upon viewing the evidence in a light most favorable to the non-moving party and presuming any doubt to favor the nonmoving party reasonable minds could come to but one conclusion, that being in favor of the moving party." *Williams v. Spitzer Auto World, Inc.*, 9th Dist. Lorain No. 07CA009098, 2008-Ohio-1467, ¶ 9. If, however, "there is substantial evidence to support [the non-moving party's] side of the case, upon which reasonable minds may reach different conclusions, the motion [for judgment notwithstanding the verdict] must be denied." *Jackovic*, 2013-Ohio-2520, at ¶ 15, quoting *Osler v. City of Lorain*, 28 Ohio St.3d 345, 347 (1986). When considering a motion for judgment notwithstanding the verdict, a court must consider neither the weight of the evidence nor the credibility of the witnesses. *Osler* at syllabus. We review a trial court's ruling on a motion for judgment notwithstanding the verdict de novo. *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002–Ohio–2842, ¶ 4.

{¶19} Magnum sought punitive damages from AirBorn on its conversion claim. According to Magnum, it provided AirBorn with some of the components that AirBorn required in order to manufacture devices for Magnum. At the time Magnum decided to stop ordering from AirBorn, AirBorn had a number of those components in its inventory. Instead of returning the components to Magnum, AirBorn decided to retain them as leverage against Magnum, which had not paid it in full. The jury found that AirBorn's retention of the components constituted the conversion of Magnum's property. It also awarded Magnum punitive damages. The trial court granted AirBorn's motion for judgment notwithstanding the verdict, however, because it

concluded that there was no evidence that AirBorn "acted with any degree of malice, hatred, ill will, revenge, or with a conscious disregard for the rights and safety of Magnum."

{¶20} In *Preston v. Murty*, 32 Ohio St.3d 334 (1987), the Ohio Supreme Court explained that "[a]ctual malice" is necessary for an award of punitive damages, which it described as "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." (emphasis omitted.) *Id.* at syllabus. An award of punitive damages based on conscious disregard for the rights and safety of others requires "a positive element of conscious wrongdoing * * *. This element has been termed conscious, deliberate or intentional. It requires the party to possess knowledge of the harm that might be caused by his behavior." *Malone v. Courtyard by Marriott L.P.*, 74 Ohio St.3d 440, 446 (1996), quoting *Preston* at 335.

{¶21} Magnum argues that there was evidence of actual malice because AirBorn retained its components even though it did not own them, Magnum requested them back, AirBorn learned that its actions were causing damage to Magnum, AirBorn refused to sell the components to the new company that Magnum had hired to make its products, and AirBorn continued holding onto the products even after they could provide it with no additional leverage in their negotiations. In *Villella v. Waikem Motors, Inc.*, 45 Ohio St.3d 36 (1989), Roy Villella took his car to an automobile shop for routine service. When he returned to the store to pick it up, the manager refused to release it until Mr. Villella paid the repair bill for his daughter's car, which he had allegedly guaranteed. Following a heated argument that spanned 90 minutes, the manager returned the car to Mr. Villella after he agreed to pay $250 toward his daughter's bill. Noting that Mr. Villella required the car to attend an out-of-town meeting the next day, the

Supreme Court determined that there was sufficient evidence from which actual malice could be inferred. *Id*. at 39. It, therefore, held that it was appropriate for the jury to have awarded punitive damages on Mr. Villella's conversion claim.

{¶22} In *Baker Indus. Equip., Inc. v. Osair, Inc.*, 9th Dist. Summit No. 15541, 1992 WL 308472 (Oct. 14, 1992), Baker Industrial provided maintenance and equipment for Osair's air separation plant. One of the devices that Baker Industrial sold to Osair had been manufactured by Ondyne, Inc. When the device stopped working, Baker Industrial told Osair to send it to Ondyne for repair. Baker Industrial then convinced Ondyne not to return the device to Osair after it was fixed, but to send it to Baker Industrial because Osair owed Baker Industrial several thousand dollars. A referee awarded Osair both compensatory and punitive damages, concluding that Baker Industrial had no right to intercept the device. This Court upheld the punitive damages award, concluding that there was competent credible evidence in the record to determine that Baker Industrial acted out of ill will, noting that, although Baker Industrial provided Osair with a temporary replacement for the device, it only intercepted the device for leverage, knowing that Osair would eventually need to pay its accounts or purchase another device to continue operating. *Id*. at *3.

{¶23} At the time of the judgment in *Villella*, the quantum of proof that was required for an award of punitive damages was preponderance of the evidence. *Villella* at 38 n.2. The legislature subsequently changed it to clear and convincing evidence. *Id*. *Villella*, therefore, cannot be directly compared to this case, even though both involved an obligee withholding the property of the obligor simply because of an unpaid debt. In *Baker Industrial*, this Court also appears to have applied a preponderance standard. *Baker Indus*. at *3.

{¶24} The evidence presented at trial indicated that AirBorn retained possession of Magnum's components because it believed that, under the UCC, it had the right to sell the components in order to mitigate its damages. In addition, although the evidence at trial indicated that the value of the components was $50,000, Magnum did not present any evidence that AirBorn's retention of them created a "great probability of causing substantial harm" to it, instead of a mere inconvenience. *Preston*, 32 Ohio St.3d 334, at syllabus. Accordingly, upon careful review of the record, we agree with the trial court that the evidence presented was insufficient for a trier of fact to find by clear and convincing evidence that AirBorn acted with actual malice when it refused to return Magnum's components to it. Magnum's third assignment of error is overruled.

AIRBORN'S ASSIGNMENT OF ERROR I

> THE TRIAL COURT ERRED IN DENYING AIRBORN'S MOTION FOR DIRECT VERDICT OR, IN THE ALTERNATIVE, FOR JUDGMENT NOTWITHSTANDING THE VERDICT ON MAGNUM'S CONVERSION CLAIM.

{¶25} In its cross-appeal, AirBorn argues that the trial court incorrectly denied its motion for a directed verdict and its motion for judgment notwithstanding the verdict on Magnum's conversion claim. According to AirBorn, it had the right to retain Magnum's components under Section 1302.78. Section 1302.78(B) provides:

> [If] the goods are unfinished an aggrieved seller may in the exercise of reasonable commercial judgment for the purposes of avoiding loss and of effective realization either complete the manufacture and wholly identify the goods to the contract or cease manufacture and resell for scrap or salvage value or proceed in any other reasonable manner.

AirBorn argues that, by keeping Magnum's components, it was maintaining its option to complete the manufacture of the devices Magnum had ordered. It also argues that, because Magnum's components were intended to be incorporated into the devices, it had the right to

resell the components for scrap. According to AirBorn, because it had a statutory right to use or dispose of the items under Section 1302.78, it could not be liable for conversion. AirBorn further argues that Magnum failed to establish the quantity, type, or value of the items allegedly converted.

{¶26} Although AirBorn argues that it had the right to complete the manufacture of Magnum's devices or resell the components to mitigate its losses, it did neither. Instead, it just held onto the components, even after Magnum's new manufacturer offered to buy them from AirBorn. The question, therefore, is whether AirBorn proceeded in a "reasonable manner" when it retained the components up to and through trial, which was 32 months after Magnum cancelled the parties' contracts. R.C. 1302.78(B). Upon review of the record, we conclude that reasonable minds could reach different conclusions on that issue. *See* Civ.R. 50(A)(4); *Ayers v. Woodard*, 166 Ohio St. 138 (1957), paragraph two of the syllabus.

{¶27} Regarding AirBorn's argument that Magnum failed to present sufficient evidence about the quantity, type, or value of the components, we note that AirBorn's former chief financial officer testified that the value of the components was approximately $50,000. We, therefore, conclude that the trial court correctly denied AirBorn a directed verdict or judgment notwithstanding the verdict on Mangum's conversion claim. AirBorn's first assignment of error is overruled.

AIRBORN'S ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN DENYING AIRBORN'S REQUEST FOR A JURY INSTRUCTION REGARDING THE LEGAL EFFECT OF R.C. 1302.78 ON MAGNUM'S COUNTERCLAIM FOR CONVERSION.

{¶28} AirBorn also argues that the trial court should have instructed the jury that, if it found in favor of AirBorn on AirBorn's breach of contract claims, "they must also find that

AirBorn's actions were authorized" in regard to Magnum's conversion counterclaim. Instead, the trial court only read Section 1302.78(B) to the jury and allowed the parties to argue about how the section applied to the facts.

{¶29} As previously noted, Section 1302.78(B) allows an aggrieved seller to complete the manufacture of the devices, resell the components for salvage value, or proceed in any other reasonable manner. It did not require the jury to find in favor of AirBorn on Magnum's conversion claim if AirBorn acted unreasonably with respect to the components, even if the jury found in favor of AirBorn on AirBorn's breach of contract claim. We, therefore, conclude that the trial court did not err when it denied AirBorn's jury-instruction request. AirBorn's second assignment of error is overruled.

### III.

{¶30} Magnum's first and third assignments of error and AirBorn's first and second assignments of error are overruled. Magnum's second assignment of error is sustained. The judgment of the Summit County court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded for a new trial with respect to the parties' breach of contract claims, but only as to the access point and motion sensor devices.

Judgment affirmed in part,
reversed in part,
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____
JENNIFER HENSAL
FOR THE COURT

WHITMORE, J.
CONCURS.

MOORE, P. J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶31} I respectfully dissent from the majority's opinion to the extent it affirms the trial court's decision to grant a directed verdict on the breach of contract claim related to the first version of the power strip and to the extent it affirms the trial court's grant of judgment notwithstanding the verdict on the issue of punitive damages. In both instances, it appears that the majority has failed to view the evidence in a light most favorable to the non-moving party.

{¶32} I cannot agree that a directed verdict was appropriate on the breach of contract claim concerning the first version of the power strip. There was evidence that at least a portion of power strips failed to work and that, under the contract, they were supposed to work. There was also conflicting evidence about AirBorn's and Magnum's involvement in retaining a design service for the device and with respect to why the device failed to work. AirBorn asserted that it

was only responsible for the manufacturing process and that Magnum was responsible for procuring an outside design service to design the device. While AirBorn presented testimony suggesting that some outside catastrophic event, such as a lightning strike, caused the device failure, Magnum presented testimony that the capacitor used in the power strip tended to explode. Magnum also investigated whether a power surge or lightning strike occurred and could find no evidence of it. There was also testimony that AirBorn directed Magnum to use the design service that was used in creating the power strip and testimony that Magnum paid the design service to speed up the design process, implying that Magnum did not separately pay for the design process itself. Further, there was no evidence that AirBorn ever suggested to Magnum that it would be unable to create a working product based on the design service, design, and components chosen. Thus, I would conclude that a reasonable trier of fact could conclude that AirBorn breached the agreement. Accordingly, I would sustain that portion of Magnum's first assignment of error.

{¶33} Moreover, I would also conclude that the trial court erred in granting judgment notwithstanding the verdict on Mangum's claim for punitive damages. There was sufficient evidence in the record to support an award of punitive damages, and thus, judgment notwithstanding the verdict was inappropriate. There was evidence that AirBorn retained Magnum's parts in order to gain leverage over Magnum in the contract dispute, that Magnum requested that the parts be returned, that Magnum informed AirBorn that the failure to return the parts would damage Magnum, and that AirBorn refused to return the parts or allow another company Mangum was working with to acquire the parts. Further, there was testimony that Mangum needed the parts because acquiring the parts elsewhere would interfere with delivering products to Magnum's customers in a timely manner. There was also testimony that AirBorn

continued to retain the parts even when doing so would be unlikely to provide any leverage and continued to hold the parts at the time of the trial. From that evidence, I would conclude that there was sufficient evidence from which a jury could reasonably conclude that AirBorn not only converted the property, but also that its actions evidenced malice.

{¶34} In concluding there was insufficient evidence to support an award of punitive damages, the majority, in part, bases its determination upon the existence of evidence that AirBorn retained the part under the belief that, under the UCC, it had the right to sell the parts to mitigate its damages. While that evidence would be appropriate to consider in determining whether AirBorn's actions were malicious, I cannot say that such evidence is determinative as a matter of law. A jury could disbelieve AirBorn's explanation, and instead believe that it acted out of ill will. Further, if a jury found that AirBorn acted out of "ill will" or a "spirit of revenge[,]" it would be unnecessary for there to be evidence that AirBorn knew that its actions would have a great probability of causing substantial harm. *See Preston v. Murty,* 32 Ohio St.3d 334 (1987), syllabus. Therefore, I respectfully dissent from the majority's decision to uphold the trial court's grant of judgment notwithstanding the verdict on the issue of punitive damages. I would sustain Magnum's third assignment of error and reinstate the jury's verdict.

APPEARANCES:

DEAN S. HOOVER, Attorney at Law, for Appellant/Cross-Appellee.

PHILIP F. DOWNEY and STEVEN A. CHANG, Attorneys at Law, for Appellee/Cross-Appellant.