[Cite as *Provolish v. DeCioccio Showroom, Inc.*, 2025-Ohio-5253.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |  |
|---|---|---|---|
| THOMASINE PROVOLISH, | : | APPEAL NO. | C-250047 |
|  |  | TRIAL NO. | 24CV19040 |
| Plaintiff-Appellant, | : |  |  |
|  |  |  |  |
| vs. | : |  |  |
|  |  | *JUDGMENT ENTRY* |  |
| DECIOCCO SHOWROOM, INC., | : |  |  |
|  |  |  |  |
| Defendant-Appellee. | : |  |  |

This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 11/21/2025 per order of the court.**

**By:**_____
       **Administrative Judge**

[Cite as *Provolish v. DeCioccio Showroom, Inc.*, 2025-Ohio-5253.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| THOMASINE PROVOLISH, | : | APPEAL NO. | C-250047 |
| | | TRIAL NO. | 24CV19040 |
| Plaintiff-Appellant, | : | | |
| vs. | : | | |
| | | *O P I N I O N* | |
| DECIOCCO SHOWROOM, INC., | : | | |
| Defendant-Appellee. | : | | |

Civil Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: November 21, 2025

*Thomasine Provolish*, pro se,

*Glennon Law Firm LLC* and *Austin R. Howard*, for Defendant-Appellee.

**CROUSE, Presiding Judge.**

{¶1} When plaintiff-appellant Thomasine Provolish received the custom chairs she had purchased through defendant-appellee DeCiocco Showroom, Inc., ("DeCiocco") something about them didn't sit quite right with her. She sued DeCiocco, asserting that her chairs were much deeper than was specified in her contract with DeCiocco, and a magistrate ruled in her favor. The trial court, however, rejected the magistrate's decision and went the other way, ruling that the chairs conformed to the terms of the parties' contract, as those terms were used in the trade. Because our review reveals no error in that determination, we affirm.

## I. BACKGROUND

{¶2} In February 2023, Provolish ordered several pieces of custom furniture from DeCiocco, including two custom chairs. Both parties introduced copies of a document labeled "Acknowledgment / Invoice," which memorialized the details of their transaction ("the acknowledgment").

{¶3} The acknowledgment specified that the chairs were to be manufactured by Stewart Furniture ("Stewart") and would be "[s]imilar to concept photo supplied of Temple Furniture #15935 Fletcher Chair (based on Stewart's interpretation of the design)." (The reference image of the Fletcher chair was also introduced into evidence.) The acknowledgment listed numerous dimensions for these custom chairs, including a "depth" of 38 inches and a "seat depth" of approximately 19 inches. The order also included one custom, "24[-inch] Square" pillow for each chair, like the one pictured with the Fletcher chair. The acknowledgment clarified that the actual measurements might vary by "+/- up to 1[ inch]" from those provided. It included no definition of "seat depth," and did not specify the thickness of either the pillows or the chair's seat back.

{¶4} When Provolish received her chairs seven months later, she discovered that the distance from the front edge of the seat cushion to each chair's seatback was approximately 29 inches. Believing this to be a deeper seat than she had ordered, Provolish reached out to Stewart, who told her to return the chairs. After measuring the chairs, Stewart informed Provolish they were within specifications. Stewart explained that they measure "seat depth" from the front edge of the seat cushion to the face of the back pillow or cushion, rather than to the seatback (as Provolish had), and that their pillows were made to a 9-inch thickness. Thus, the "seat depth," as Stewart measured it, was 20 inches (the 29 inches to seatback, less the 9-inch pillow), within an inch of the requested 19-inch seat depth.

{¶5} Provolish nevertheless continued to assert that the chairs were not what she had ordered. DeCiocco offered to have Stewart remake the pieces and sell them to Provolish at cost, but Provolish declined this offer.

{¶6} Provolish then filed a complaint against DeCiocco in the small-claims division of the Hamilton County Municipal Court, where a hearing was held before a magistrate. After the hearing, the magistrate rendered a decision for Provolish in the amount of $5,999.

{¶7} DeCiocco objected to the magistrate's decision, arguing that (1) DeCiocco's contract had been with Provolish's since-dissolved LLC, not Provolish herself, and (2) the chairs had conformed to the specifications in the contract. The trial court sustained that second objection and declined to reach the first. The court then rejected the magistrate's decision and entered judgment in favor of DeCiocco, from which Provolish now appeals.

## II. DECIOCCO'S LATE-FILED BRIEF

{¶8} Before addressing the merits of Provolish's appeal, we first consider her

argument that this court should strike DeCiocco's brief as untimely filed.

**{¶9}** On May 7, this court's magistrate accepted a late-filed brief from DeCiocco pursuant to Loc.R. 14(F). In her reply brief, Provolish nevertheless contends that DeCiocco's "arguments should be stricken in their entirety" because its brief was untimely. Because this court's magistrate already issued an order accepting DeCiocco's brief, we construe Provolish's challenge as a request to set aside the magistrate's order.

**{¶10}** An appellate court refers matters to a magistrate pursuant to App.R. 34, which incorporates the rules governing magistrate proceedings from Civ.R. 53. Under this latter rule, a "magistrate may enter orders without judicial approval if necessary to regulate the proceedings and if not dispositive of a claim or defense," subject to the terms of the relevant order referring the matter to the magistrate. Civ.R. 53(D)(2)(a)(i). This court's standing order of reference expressly "empower[s] and authorize[s]" its magistrates "to rule on" certain classes of "routine procedural motions," including "[m]otions to extend deadlines for briefs, record, motion response, show cause, or to comply with any other order or rule of this Court." *In re Amended Order of Reference*, No. M-230005 (1st Dist. Aug. 8, 2023). The order in this case fell squarely within the scope of that reference, and so could be entered without judicial approval.

**{¶11}** If Provolish wished this court to set aside the magistrate's order, she had to file a timely and separate motion requesting the court do so, not simply refer to the issue in her brief. Unlike a magistrate's final decision, which is effective only once adopted by the referring court, Civ.R. 53(D)(4)(a), a magistrate's order on a nondispositive matter is effective and binding unless stayed or set aside by the referring court. *See* Civ.R. 53(D)(2). A party who wishes to challenge a magistrate's nondispositive order must "*file a motion* with the court to set aside a magistrate's

5

order" within ten days of the order's filing. (Emphasis added.) Civ.R. 53(D)(2)(b). A "motion" is a particular "form" of application to an appellate court, App.R. 15(A), distinct from a brief. *Compare* App.R. 15 and 19(B), *and* Loc.R. 15 and 19(A), *with* App.R. 16 and 19(A), *and* Loc.R. 16, 19(B), and 19(C).

{¶12} Provolish failed to properly challenge the magistrate's order because she only raised her issue with the magistrate's order in her reply brief; she never "file[d] a motion with the court" seeking to set it aside. *See* Civ.R. 53(D)(2)(b). Because she never properly asked us to set it aside, that order is just as valid and effective as any issued by this court. DeCiocco's brief was validly accepted under Loc.R. 14(F).

### III. BREACH-OF-CONTRACT CLAIM

{¶13} Provolish challenges the trial court's ruling sustaining DeCiocco's objections to the magistrate's decision and entering judgment for DeCiocco. In two assignments of error, she argues that the trial court erred by (1) concluding that the chairs she received conformed to the parties' contract, and (2) accepting measurements provided by DeCiocco. DeCiocco contests both points and argues that, in any event, this court can affirm the judgment on the ground that Provolish's now-dissolved LLC (not Provolish herself) was a party to the contract.

{¶14} We review the trial court's decision not to adopt a magistrate's finding, conclusion, or decision for an abuse of discretion. *See Ditech Fin., L.L.C. v. Balimunkwe*, 2025-Ohio-4884, ¶ 23 (1st Dist.), citing *In re Estate of Knowlton*, 2006-Ohio-4905, ¶ 43 (1st Dist.). But we review the trial court's *own* findings and conclusions as we would in any other case. *See id.* at ¶ 24. Thus, we consider legal questions de novo, while reviewing the trial court's factual findings to determine if they were against the manifest weight of the evidence. *See Washington v. Am. Gen. Life Ins. Co.*, 2022-Ohio-339, ¶ 13 (1st Dist.); *Maddali v. Haverkamp*,

6

2022-Ohio-3826, ¶ 17-18 (1st Dist.). On a manifest-weight review, this court considers the record and weighs the evidence and witness credibility to ensure that the trial court did not lose its way in resolving evidentiary conflicts and create a manifest miscarriage of justice necessitating a new trial. *Maddali* at ¶ 18, citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20.

**{¶15}** Because Provolish's second assignment of error (regarding choice of measurements) is logically antecedent to her first (regarding the chairs' conformity to the contract), we address her assignments of error out of order.

### A. *Choice of Measurements*

**{¶16}** In her second assignment of error, Provolish protests the trial court's acceptance of measurements provided by a party whom she asserts had "a vested interest." The trial court's acceptance of the measurements constituted a factual finding as to the dimensions of the chairs. We therefore consider only whether it was against the manifest weight of the evidence.

**{¶17}** In its decision, the trial court relied on measurements from a series of photos taken by Stewart, the chairs' manufacturer. The photos, which were submitted into evidence by DeCiocco, document the chairs' dimensions by showing a tape measure placed against and along various portions of the chairs and cushions. The trial court explained that it relied on these measurements because they were "taken by a disinterested third party to whom the chairs were returned and where the chairs are currently being stored."

**{¶18}** Because Provolish offered no substantive evidence that these measurements were inaccurate, we cannot say the trial court lost its way in accepting them as true. While Stewart, as the manufacturer, may not have been an *entirely* disinterested party, Provolish has offered no substantive evidence that Stewart's

measurements were affected by any collateral interest in the outcome or were inaccurate in any particular way. In fact, Provolish does not argue that any of the relevant measurements represented in the photographs are incorrect.

**{¶19}** We therefore hold that the trial court's finding that Stewart's photographs accurately reflected the relevant dimensions of the chairs was not against the manifest weight of the evidence. Provolish's second assignment of error is overruled.

### B. *Contract Meaning & Breach*

**{¶20}** In her first assignment of error, Provolish contends that the trial court erred in concluding that the measurements provided at trial conformed to the terms of the contract. In her principal brief to this court, Provolish focuses solely on the trial court's alleged failure to recognize that "[t]he delivered chairs deviated by 7 inches in seat depth, substantially breaching the agreed terms." She makes two arguments on this point, which must be understood in the alternative: (1) that the term "seat depth" referred to the distance from the front of the seat to the seatback, *not* to the face of the back pillow/cushion, and (2) that, in any event, the distance from the front of the chair to the seatback should have been 22 inches with a 3-inch pillow, just like the Fletcher chair, which the acknowledgment specified as the design reference.

#### 1. *Meaning of "Seat Depth"*

**{¶21}** There is no dispute that the acknowledgment promised a chair with a seat depth of approximately 19 inches, give or take an inch. The question is what "seat depth" referred to and whether the chairs satisfied these standards. The acknowledgment does not define "seat depth," and the parties offer competing definitions. Provolish contends that "seat depth" refers to the distance from the front edge of the seat *to the seatback* (without any pillow). DeCiocco argues that it refers to

the distance from the front edge of the seat *to the face of the seatback pillow or cushion.*

**{¶22}** Determining the meaning of "seat depth" is a question of contract interpretation. Because this was a contract primarily for the sale of goods, its interpretation is governed by article two of the Uniform Commercial Code ("UCC"), adopted by Ohio in R.C. Ch. 1302. *See AirBorn Electronics, Inc. v. Magnum Energy Solutions, L.L.C.*, 2017-Ohio-70, ¶ 14 (9th Dist.). When the terms in the parties' "confirmatory memoranda"—in this case the copies of the acknowledgment—agree, those terms govern the agreement and cannot be contradicted by evidence of prior or contemporaneous agreements. R.C. 1302.05 (UCC 2-202). However, terms in the memoranda "may be explained or supplemented . . . by course of performance, course of dealing, or usage of trade." R.C. 1302.05(A) (UCC 2-202(a)); *see also Varavvas v. Mullet Cabinets, Inc.*, 2009-Ohio-6962, ¶ 44 (5th Dist.).

**{¶23}** In this case, DeCiocco and the trial court relied upon evidence of "usage of trade," which can include "any practice or method of dealing having such regularity of observance in a place, vocation, or trade as to justify an expectation that it will be observed with respect to the transaction in question." R.C. 1301.303(C) (UCC 1-303(c)). Under the UCC, the "existence and scope" of a trade usage are questions of fact to be proved by the party asserting the usage. *Id.*; *see also Varavvas* at ¶ 57 (citing R.C. 1302.11, which has since been reenacted, in relevant part, in R.C. 1301.303); *Den norske Bank AS v. First Natl. Bank of Boston*, 75 F.3d 49, 58-59 (1st Cir. 1996). We therefore review findings about trade usage, and the meaning such usages impart to contractual terms, as findings of fact under a manifest-weight standard. *Compare Varavvas* at ¶ 58 (upholding interpretation of contract based on trade-usage evidence because party did not raise manifest-weight challenge).

9

**{¶24}** Although the parties' competing definitions of "seat depth" are both plausible on their face, DeCiocco introduced evidence at the hearing that its definition was consistent with usage of trade. Before the magistrate, DeCiocco introduced emails from Nikki Fabrizi, a professional with experience in the furniture-manufacturing industry.[1] Fabrizi's email explained that both her firm and Wesley Hall (a well-known furniture manufacturer) "call out a chair's depth from the front of the chair to the face of a pillow." Fabrizi further opined that, if Provolish's chairs had been only 19 inches from edge to seatback, "there would be no room for a pillow which, in [Fabrizi's and her senior upholsterer's] opinion, is an integral part of the chair [Provolish] used as a visual reference for her desired style."

**{¶25}** DeCiocco thus offered evidence that, as used in the trade, "seat depth" referred to the depth from the front edge of the seat to the face of the back pillow. Provolish did not introduce any evidence to rebut this trade understanding. The trial court thus found that DeCiocco's proposed definition of "seat depth" was consistent with its usage in the furniture-manufacturing trade, and that it carried that trade meaning in the contract. We cannot say that this finding was contrary to the manifest weight of the evidence.

**{¶26}** Under this definition, Provolish's chairs conformed to the "seat depth" requirement in the acknowledgment. The Stewart photographs showed that the chairs had a "seat depth" of between 19 and 20 inches when measured from the front edge of the seat to the front face of the seatback pillow, which was within 1 inch of the 19-inch

---

[1] Although these emails are clearly hearsay under Evid.R. 802, "the Ohio Rules of Evidence do not apply to hearings in small claims court." *See Cunningham v. Michael J. Auto Sales*, 2021-Ohio-1390, ¶ 17 (1st Dist.), citing *Cleveland Bar Assn. v. Pearlman*, 2005-Ohio-4107, ¶ 15; *see also* Evid.R. 101(D)(8). Rather, in "small-claims proceedings, 'the reliability, credibility, and admissibility of evidence are determined by the trial court.'" *Cunningham* at ¶ 18, quoting *Karnofel v. Girard Police Dept.*, 2005-Ohio-6154, ¶ 18 (11th Dist.).

seat depth listed in the acknowledgment. Thus, the trial court did not err in concluding that, with respect to their seat depth, the chairs conformed to the contract.

### 2. *Deviations from the Reference Chair*

{¶27} Provolish also argues, presumably in the alternative, that her chairs failed to conform to the agreement because they did not match the dimensions of the Fletcher chair from Temple Furniture, an image of which Provolish provided to DeCiocco as a reference. According to email correspondence between Provolish and Temple Furniture, the Fletcher chair had a seat measuring 22 inches from front edge to seatback without pillow ("total seat depth"), and came with a 3-inch-thick pillow. These dimensions differed substantially from the chairs Provolish received, which, according to Stewart's photographs, had a total seat depth of roughly 29 inches and came with pillows that were roughly 9 inches thick.

{¶28} The acknowledgment states that Provolish's chairs would be "[s]imilar to concept photo supplied of Temple Furniture #15935 Fletcher Chair," but clarified they would be "based on Stewart's interpretation of the design." The acknowledgment did not list a 22-inch total seat depth or a 3-inch pillow thickness. It is silent as to these dimensions, providing only for a "seat depth" of 19 inches and a "depth" of 38 inches. Further, no correspondence between the parties prior to the sale cited a desired total seat depth or pillow thickness.

{¶29} We hold that Provolish and DeCiocco's contract neither incorporated the dimensions of the Fletcher chair itself, nor obligated DeCiocco to discover or solicit those dimensions. DeCiocco was obligated to provide chairs that would conform to the dimensions listed in the acknowledgment and be similar to the design of the Fletcher chair in the concept photo, as interpreted by Stewart. The contract's language therefore suggested that any gaps in the expressly-listed dimensions would be filled

11

by Stewart's *interpretations* of the Fletcher chair design *as seen in the photo*—not by the unlisted dimensions of the actual Fletcher chair. So long as the final product was within the listed specifications and "[s]imilar to [the] concept photo supplied," it conformed to the contract.

{¶30} As already explained, the "seat depth" of the delivered chairs was within an inch of the 19-inch dimension required by the acknowledgment. And Provolish has not argued that the chairs' total depth was anything other than the agreed-upon 38 inches. The chairs therefore conformed to the expressly-listed depth dimensions. Further, Provolish has not argued that the finished chairs were not a reasonable interpretation of and similar to the *reference photo* of the Fletcher chair, only that they failed to conform to the Fletcher chair's actual dimensions. Because Provolish did not make those additional dimensions a part of the agreement, and because the contract did not impose a duty on DeCiocco to discover them, the contract did not require the total seat depth and pillow thickness to match those of the Fletcher chair.

{¶31} Provolish has therefore failed to show that the trial court erred in concluding that the chairs she received conformed to the terms of the contract. Provolish's first assignment of error is, accordingly, overruled.

## IV. Conclusion

{¶32} The trial court did not err, either in accepting the measurements in Stewart's photographs or in concluding that the depth of the chairs conformed to the terms of the agreement. Accordingly, we overrule Provolish's two assignments of error, affirm the trial court's judgment, and decline to address DeCiocco's proposed alternative basis for affirmance.

Judgment affirmed.

BOCK and MOORE, JJ., concur.